In re TIRE KINGS OF AMERICA, INC., Debtor.

TIRE KINGS OF AMERICA, INC., Plaintiff,

v.

HOFFMAN TIRE COMPANY, INC. and Third National Bank and Trust Company of Scranton, Defendants.

Bankruptcy No. 5–90–00013.
Adv. No. 5–90–0002.

United States Bankruptcy Court, M.D. Pennsylvania.

Sept. 24, 1993.

Robert C. Nowalis, Wilkes–Barre, PA, for debtor/plaintiff.

Armand E. Olivetti, Scranton, PA, for defendants.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Before the Court is a Motion for Reconsideration of this Court's earlier Order of May 18, 1993 filed by the above-captioned Plaintiff. For the reasons provided herein, the Motion for Reconsideration is granted and judgment is entered in favor of the Plaintiff.

The Court further vacates its earlier Order of May 18, 1993 granting verdict for the Defendant, Hoffman Tire Company, Inc. (hereinafter "Defendant").

The instant matter was commenced by a Complaint seeking a return of a preferential transfer made by the Plaintiff to Defendant under the dictates of 11 U.S.C. § 547(b). After hearing testimony and accepting certain documentary evidence, the Court made findings of fact and conclusions of law which, in short, found that the Plaintiff had met the requirements of a preferential transfer under 11 U.S.C. § 547(b)(1) through (4). The Court, however, found that the last requirement of that Code section namely, Section 547(b)(5) was not supported by the evidence. Consequently, the Court entered a ruling in favor of the Defendant and found that the elements of a preferential transfer were not established.

■ Thereafter, the Plaintiff filed a timely Motion for Reconsideration and argues that the Court's findings of fact and conclusions of law were in error but more particularly, that this Court based its decision on an erroneous interpretation of Section 547(b)(5). Heretofore, the Court's approach to whether or not the requirements of that subsection were met was whether or not the Trustee, or Debtor, established a preferential transfer by showing that the Defendant received a larger percentage of his claim than he would receive as a dividend in a Chapter Seven case. In short, the Court would do a liquidation analysis to determine whether the creditor received more than it would have received under a Chapter Seven liquidation. Other Courts have read Section 547(b)(5) as did this Court. See e.g. *Countryman, The Concept of Avoidable Preference in Bankruptcy,* 38 Vand.L.Rev. 713, 736 and Fn. 137 (hereinafter "Countryman").

The Plaintiff brought to the Court's attention the seminal case of *Palmer Clay Products Company v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936) and its progeny. See *In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416 (9th Cir.1985); *In re Lease–A–Fleet, Inc.,* 151 B.R. 341 (Bkrtcy.E.D.Pa. 1993); *In re Virginia–Carolina Financial*

*Corp.,* 954 F.2d 193 (4th Cir.1992); *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458 (6th Cir.1991), to. name a few. These cases all stand for the proposition that a finding of a preferential transfer and, in particular, the requirements of Section 547(b)(5) are found where the unsecured creditor and similarly situated creditors will receive less than one hundred percent (100%) recovery on their claims. This is commonly referred to as the "greater percentage" test. *4 Collier on Bankruptcy, 15th Ed., ¶ 547.08, p. 547–41* provides the following:

Section 547(b)(5) is a central element of the preference section because it requires a comparison between what the creditor actually received and what it would have received under the chapter 7 distribution provisions of the Code. Specifically, the trustee must prove that the creditor received more than it would if the case were a chapter 7 liquidation case, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the provisions of the Code.

In making its determination, the court must decide the transferee's class and determine what distribution that class would have received had the transfer not been made. If, for example, the debtor has only one governmental unit creditor with a valid tax claim entitled to priority under section 507(a)(7), the debtor's payment in full to this creditor should not constitute a preference as long as the governmental unit would have received the same distribution in a liquidation case under chapter 7. In contrast, any payment to a general *unsecured* creditor within the ninety-day period preceding the filing of the petition would be preferential if other creditors in the same class would not receive the same payment in a chapter 7 liquidation, *i.e.,* the chapter 7 distribution *plus* the payment received.

Section 547(b)(5) codifies the Supreme Court's holding in *Palmer Clay Products*

*Co. v. Brown:* whether a particular transfer is preferential should be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results."

The court in *Elliott v. Frontier Properties/LP (In re Lewis W. Shurtleff, Inc.)* explained the application of the *Palmer Clay Products* analysis to section 547(b)(5):

In determining the amount that an alleged preferential transfer enables the creditor to receive, the creditor must be charged what the value of what was transferred plus any additional amount that he would be entitled to receive from a Chapter 7 liquidation; net result is that, as long as the distribution in bankruptcy is less than one-hundred percent, any payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.

We also find the following guidance from *Countryman, supra at 735 and 736* which provides in part as follows:

Beyond these matters, most courts have had no difficulty in reading section 547(b)(5) as incorporating the rule of *Palmer Clay Products:* a preferential effect exists if the trustee can establish that a defendant unsecured, nonpriority creditor, without the allegedly preferential payment or lien, would have received less than a 100% payout in a Chapter 7 liquidation. The result continues to seem sensible for the same reason it did under *Palmer Clay Products*—either because the preferential transfer covered 100% of defendant's claim or, if the transfer covered less, because the defendant would get on the unsecured balance the same dividend that other creditors in his class would get on 100% of their claims. In so reading section 547(b)(5), when the creditor receives a transfer as a partial payment or lien for his debt, most courts have seen that the inquiry is not whether, without the transfer, the creditor would have received a partial dividend equal to the amount of the transfer in a Chapter 7 distribution; rather, the inquiry is ·whether the creditor would have received a 100% dividend.

It is clear from the above cases and commentaries that the Court did apply an erroneous interpretation of Section 547(b)(5).

The question now becomes whether or not the Plaintiff has met its burden under Section 547(b)(5) by evaluating the evidence, both documentary and testimonial, presented at the time of trial. The Plaintiff argues that the testimony reveals that at the time of the filing of the bankruptcy the Debtor was insolvent. Not only does the Plaintiff look to the testimony of Mr. Pearlman to support that argument but he also directs this Court's attention to Section 547(f) which establishes a presumption that the Debtor is insolvent on and during the ninety (90) days immediately preceding the date of the filing of the petition. This, of course, is a rebuttable presumption and the Court finds now as it did at the time of the hearing that the only evidence in support of solvency presented by the Defendant was innuendo by Mr. Hoffman and that this evidence certainly falls far short of rebutting the presumption of insolvency at the time of the transfer and as of the date of the filing of the petition.

What exactly does this mean, however, for the Plaintiff's Complaint alleging a preferential transfer?

Initially, the Court notes that Mr. Pearlman's testimony that the assets were approximately Three Hundred Thousand Dollars to Four Hundred Thousand Dollars ($300,000.00—$400,000.00) and that liabilities amounted to approximately One Million Dollars ($1,000,000.00) is the only evidence presented on the solvency issue. Consequently, the Court finds that, on the date of the filing of the petition with the liabilities far outnumbering the assets, unsecured creditors could not possibly have received one hundred per-

cent (100%) distribution on their claims. Consequently, the Debtor has met his burden of proof as to the preferential nature of the transfers in question.

Finally, the Debtor argues that the only situation where a secured creditor can fall within the dictates of Section 547(b)(5) is where that creditor is undersecured and receives a payment in excess of the value of its collateral. The Defendant argues that the evidence shows that the payments did not exceed the value of the security. The Court has reviewed the entire transcript and has determined that it cannot change its ruling that the facts presented to the Court concerning the secured portion of the debt and its payment from sales of inventory do not present an adequate defense against the preference cause of action. The Court found that a portion of the debt was secured. The Court found that on approximately October 12th or thereabouts, there was One Hundred Thirty–Four Thousand Dollars ($134,000.00) of assets in the Debtor's possession and that sometime within a one or two week period there was a transfer of inventory to the Defendant approximating Eighty–Five Thousand Dollars ($85,000.00). This left unaccounted approximately Forty–Nine Thousand Dollars ($49,000.00) worth of inventory that was liquidated. It is the tracing of the proceeds of the sales of that inventory to which this Court can only speculate. Whether or not the approximately Thirty–Five Thousand Dollars ($35,000.00) that was paid to the Defendant by the Debtor came from the proceeds of those sales cannot be determined by the Court.

Consequently, this Court vacates its earlier Order of May 18, 1993 entering judgment on behalf of the Defendant and hereby enters judgment in favor of the Plaintiff as attached hereto.

### ORDER

Pursuant to the attached Opinion, the Court vacates its earlier Order of May 18, 1993 entering judgment on behalf of the Defendant and hereby enters judgment in favor of the Plaintiff and against the Defendant in the amount of Thirty–Five Thousand Four Hundred Seventy–Three and 22/100 Dollars ($35,473.22).