**In re M GROUP, INC., Debtor.**

**Larry Waslow, in his capacity as Unsecured Claims Administrator of M Group, Inc., Plaintiff,**

v.

**The Interpublic Group of Companies, Inc. t/a Transworld Marketing Corp., Defendant.**

**Bankruptcy No. 00–1936(JKF).**
**Adversary No. 02–3434(JKF).**

United States Bankruptcy Court, D. Delaware.

April 29, 2004.

Joanne Bianco, Stephanie Ann Fox, Steven K. Kortanek, Wills, Klehr, Harrison, Harvey, Branzburg & Ellers, Wilmington, DE, Victoria Watson Counihan, Greenberg Traurig, LLP, Wilmington, DE, for The Monet Group, Inc.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Chief Judge.

### FACTS

On May 11, 2000 (the "Petition Date"), M Group, Inc. and its related entities ("the Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 cases were jointly administered for procedural purposes only. The Debtors remained in possession of and managed their respective properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

On December 5, 2000, an Order was entered authorizing the substantive consolidation of the Debtors' Chapter 11 cases into a single Chapter 11 case. In October 2001, an Order was entered confirming the First Amended Joint Plan of Liquidation, and Larry Waslow, the Unsecured Claims Administrator ("UCA"), was appointed and vested with the right to bring avoidance actions on behalf of Debtors.

The UCA subsequently filed a Complaint to Avoid and Recover Preferential Transfers against Transworld on May 9, 2002. He seeks to recover payments in the amount of $119,959.69 allegedly made to Transworld during the 90 days immediately preceding the Petition Date. Transworld filed an answer raising certain affirmative defenses. On June 13, 2003, the UCA filed a Motion for Summary Judgment seeking avoidance of the transfers deemed preferential in his original Complaint.

The issue before the court is whether the UCA's Motion for Summary Judgment seeking to avoid certain transfers made by Debtors to Transworld on 2/4/00, 2/11/00, 2/18/00, and 2/25/00 should be granted. For the reasons which we follow we find that there is no genuine issue as to any material fact and will enter summary judgment in favor of the UCA.

### ANALYSIS

#### A. 11 U.S.C. § 547(b)

Section 547(b) of the Bankruptcy Code permits a trustee to avoid certain pre-bankruptcy transfers as preferences. That section sets forth the elements of an avoidable preference as "any transfer of an interest of the debtor in property"

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7

---

1. This Memorandum Opinion constitutes our findings of fact and conclusions of law. The court's jurisdiction was not at issue.

of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b). *See In re Allegheny Health, Education and Research Foundation,* 292 B.R. 68, 78 (Bankr.W.D.Pa.2003). *See also* 5 Collier on Bankruptcy, ¶ 547.03 (15th Rev. Ed.2004). After examining the transfers and invoices contained in the UCA's Exhibits A and B to his motion for summary judgment, Dkt. No. 12, we find that the first two elements of § 547(b) are plainly satisfied. It is not disputed, as further evidenced by Exhibit A, captioned "The Transfers", that the checks are made payable to "Trans World Marketing Corp." and to or for the benefit of Transworld as a creditor. The invoices in Exhibit B, captioned "The Invoices Related to the Transfers", show that the transfers were made on account of an antecedent debt owed by Debtors before the transfers were made.

■ Section 547(b) also requires that the transfers be made while the debtor was insolvent. The checks that represent three of the transfers at issue here were dated while Debtors were presumed insolvent. Under § 547(f), "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition" and the 90th day in this case was 2/11/00. The transfers that are dated 2/11/00, 2/18/00 and 2/25/00 also cleared the bank within the 90 day period prior to the petition date. Therefore, the Debtors are presumed to have been insolvent when those three transfers occurred. Transworld has not offered any evidence to rebut the presumption of insolvency, while the UCA has offered additional evidence to support the presumption of insolvency. *See* Exhibit C to UCA's Motion for Summary Judgment, captioned "Affidavit of Matt Tomlin, CPA." Matthew R. Tomlin, Jr., is a CPA with a firm retained by the UCA. His affidavit states that he reviewed the Debtors' books and records and concluded that the Debtors were insolvent during the 90 day period. Therefore, we find that these transfers were made while the Debtors were insolvent. The fourth element is satisfied.

The fourth transfer that the UCA seeks to avoid was made by check dated 2/4/00 and, at first glance, seems to have occurred outside the relevant 90 day period. Under § 547(b), however, a transfer by check occurs when the check is honored. *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). In this case, the check dated 2/4/00 was honored on 2/17/00 and, therefore, this payment also falls within the 90 day preference period.

■ The fifth element requires a comparison between what the creditor actually received and what it would have received under the Chapter 7 distribution provisions of the Bankruptcy Code. Courts have consistently held that as long as the distribution in bankruptcy is less than 100 percent, any payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made. *See In re Allegheny Health, Education and Research Foundation,* 292 B.R. 68, 78 (Bankr.W.D.Pa.2003); *In re Tire Kings of America, Inc.,* 164 B.R. 40, 42 (Bankr. M.D.Pa.1993). *See also In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458, 465 (6th Cir.1991).

Mr. Tomlin also states in his affidavit that "[t]he transfers (as defined in the Motion) permitted Defendant to receive more than it would have received under a proceeding under Chapter 7 of the Bankruptcy Code since the Debtors' unsecured creditors would not receive payment of their claims in full or in the amount of the transfers." Affidavit of Matthew R. Tomlin, Jr., CPA, Exhibit C to UCA's Motion for Summary Judgment, Dkt. No. 12, at ¶ 6. Transworld does not offer any evidence to rebut this charge and, therefore, the fifth element is satisfied for purposes of this decision.

We find that the transfers at issue satisfy all of the elements of § 547(b) and are preferences. Nevertheless, these transfers may be unavoidable if they fall within the scope of the ordinary course exception found at § 547(c)(2) and discussed below.

**B. Defenses to 11 U.S.C. § 547(b)**

██ The four transfers totaling $119,959.69 satisfy all the elements of a preference under § 547(b). Even if all the elements of § 547(b) are satisfied, however, the transfers may not be avoided if the defendant transferee can prove that it is entitled to rely on one of the exceptions listed in § 547(c). *In re Forman Enterprises, Inc.*, 293 B.R. 848, 856 (Bankr. W.D.Pa.2003). Transworld argues that these transfers fall within the exception in § 547(c)(2), which makes unavoidable payments in the ordinary course of business.

██ For a payment to qualify under § 547(c)(2), a creditor must prove by a preponderance of the evidence three statutory conjunctive elements: (A) the debtor incurred the underlying debt in the ordinary course of business of the debtor and the transferee; (B) the debtor made the transfer in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) the payment was made according to ordinary business terms. 11 U.S.C. § 547(c)(2). *See also In re Fulcrum Direct, Inc.*, 2003 WL 1878070 at *3 (Bankr.D.Del., April 14, 2003).

1. *Ordinary Course of Business Between Debtors and Transworld— 11 U.S.C. § 547(c)(2)(A) and § 547(c)(2)(B)*

██ According to the "Listing of Payments From 2/01/1999 Thru 2/28/2000" [2] supplied by Transworld, the parties had been doing business for approximately two years prepetition. There is no dispute that the debts resulting in the transfers at issue were incurred by Debtors in the ordinary course of business between them and Transworld. Thus, the test of § 547(c)(2)(A) is met. We find, however, that § 547(c)(2)(B) is not met inasmuch as the payments were not made in the ordinary course of business between the parties to this adversary.

Transworld asserts that "the average period of time that passed between the invoice date and the payment date in the time leading up to the preference period is almost identical to that of the Preference Period." Defendant's Response to UCA's Motion for Summary Judgment, Dkt. No. 14, at ¶ 24. Transworld asserts that payments were made on the average of 112.6 days from the invoice date during the eight months prepetition. It also asserts that the average period of time that elapsed between the invoice date and payment date during the preference period is 113.5 days, which is a difference of less than one day from the aging during the

**2.** This List is attached as an exhibit to Defendant's Response to UCA's Motion for Summary Judgment, Dkt. No. 14.

eight months prior to the preference period. The UCA, however, validly disputes these calculations. The average payment date in the eight months prior to the preference period is actually 95 days. The average payment date during the preference period is 112.7 days.

The "Listing of Payments From 2/01/1999 Thru 2/28/2000" supplied by Transworld shows some similarity in the account aging history in the preference period and that in the pre-preference period. In both instances, the account aging history shows payments accepted over a broad range of dates. However, the range narrowed significantly in the preference period. For instance, the aging for an invoice dated 7/17/98 was 455 days; the aging for an invoice dated 12/31/98 was 36 days; and the aging for an invoice dated 3/31/99 was 119 days. In comparison, the aging during the preference period ranged from 84 days to 164 days, which shows an account aging history that is more consistent during the preference period than it was prior to the start of the preference period.

Transworld asserts that "payments were consistently made past the due date throughout the course of dealings between Transworld and the Debtor." Defendant's Response to the UCA's Motion for Summary Judgment, Dkt. No. 14, at ¶ 25. Because of the significant variations in the account aging history, it appears that late payments made by Debtors to Transworld were considered acceptable. Courts have held that lateness of payment does not preclude a finding that the payment was made in the ordinary course. In fact, a pattern of late payments can establish ordinary course between the parties. *In re Big Wheel Holding Co.*, 223 B.R. 669, 674 (Bankr.D.Del.1998) (citing e.g., *In re Parkline Corp.*, 185 B.R. 164, 169 (Bankr.D.N.J. 1994)). Nevertheless, although the payments in this case appear to routinely have been made late, they were made within a shorter time period during the preference period. Courts have held that early payments can be outside the ordinary course of business. *See In re Continental Energy Associates Limited Partnership*, 228 B.R. 96 (Bankr.M.D.Pa.1998). *See also In re Craig Oil Co.*, 785 F.2d 1563, 1567 (11th Cir.1986).

The evidence establishes that payment schedules here were altered as bankruptcy became a possibility. Essentially, the ordinary course of business between the parties outside of the preference period consisted of making payments on a much more random and haphazard basis than during the preference period when payments were made between 84 and 164 days after the invoice date. We find that the payments during the preference period were not made in the ordinary course for purposes of § 547(c)(2)(B).

### 2. *Ordinary Business Terms—11 U.S.C. § 547(c)(2)(C)*

■ The third prong of the § 547(c)(2) test requires an independent analysis of the standards of the applicable industry. *See In re First Jersey Sec., Inc.*, 180 F.3d 504 (3d Cir.1999); *In re APS Holding Corp.*, 282 B.R. 795, 802 (Bankr.D.Del. 2002). No evidence of industry standards was produced by either party. However, because Transworld failed to rebut the UCA's evidence that the transfers on 2/4/00, 2/11/00, 2/18/00, and 2/25/00 were not made in the ordinary course of business, it is not necessary to consider this third prong.

Because Transworld has not established all the elements of the § 547(c)(2) defense, we find that the transfers were avoidable preferential transfers.

### 3. *Dispute Over Amount Owed*

Transworld asserts that a dispute of material fact exists because in a demand letter dated April 2, 2002, over a month before this adversary proceeding was filed on May 9, 2002, the UCA asserted that the total amount of preferential payments was $52,014.44 (alleged to be the total of only two checks paid during the preference period). *See* Defendant's Response to UCA's Motion for Summary Judgment, Dkt. No. 14, at ¶¶ 11–14. The complaint and the motion for summary judgment, however, allege that the transfers during the preference period total $119,959.69. Transworld does not allege that the documentation provided in support of the UCA's motion for summary judgment is defective or inaccurate in any way. Transworld submits no contradictory evidence. Therefore, the fact that before the complaint was filed a different demand was made has no bearing on the undisputed facts of the matter as they are presented to us through the pleadings and exhibits thereto. We find that no dispute of material fact exists with respect to the amount of the transfers.[3]

### CONCLUSION

All four transfers at issue in the UCA's motion for summary judgment qualify as preferences under § 547(b). Notwithstanding Transworld's arguments, the transfers do not qualify for the ordinary course of business exception stated in § 547(c)(2). The record, when construed in a light most favorable to the non-moving party, fails to raise any genuine issue of material fact. Accordingly, summary judgment will be granted in favor of the UCA and against Defendant in the amount of $119,959.69.

An appropriate order will be entered.

### JUDGMENT ORDER

**AND NOW,** this 29 day of **April, 2004,** for the reasons expressed in the foregoing Memorandum Opinion it is **ORDERED, ADJUDGED and DECREED** that the Plaintiff's Motion for Summary Judgment is **GRANTED** and Judgment is entered for the Plaintiff and against the Defendant in the amount of $119,959.69.

It is **FURTHER ORDERED** that the Clerk shall close this Adversary.

---

**3.** In its answer to the complaint Transworld asserts the new value defense. However, it did not state any facts regarding new value in its answer to the complaint and did not mention that defense in connection with the motion for summary judgment. We, therefore, do not address it.