## In re AMERISERVE FOOD DISTRIBUTION, INC., et al., Debtors.

**AFD Fund, on behalf of the substantively consolidated post-confirmation estate of the AmeriServe Food Distribution, Inc., et al., Plaintiff,**

v.

**Transmed Foods, Inc., Defendant.**

Bankruptcy No. 00–358.
Adversary No. 01–1225 JKF.

United States Bankruptcy Court,
D. Delaware.

Sept. 28, 2004.

Michael R. Seidl, Esquire, Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C., Wilmington, DE, for debtor.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

The matter before the court is a motion for summary judgment filed on behalf of debtors AmeriServe Food Distribution, Inc., *et al*, in this preference action. Plaintiff AFD Fund is the representative of the post-confirmation estate of Debtor.

### FACTS

On January 31, 2000, AmeriServe Food Distribution, Inc., *et al.*, ("Debtors") filed its chapter 11 bankruptcy petition. A liquidating plan of reorganization was confirmed on November 28, 2000. AFD Fund is the entity administering Debtors' substantively consolidated post-confirmation estates. Debtors distributed food and food service products to franchised restaurants on a nationwide basis. In this context, Debtors purchased their primary supply of olives from defendant Transmed, an importer and wholesaler of olives, for approximately ten years prepetition.

As of December 3, 1999, Debtors owed Transmed $1,270,375 based on unpaid and outstanding invoices for olive shipments. Debtors paid Transmed $963,001.30 by 34 checks that cleared between December 3, 1999, and January 26, 2000. On May 9,

---

1. The court's jurisdiction is not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2001, AFD Fund filed a complaint for avoidance and recovery of preferential transfers under 11 U.S.C. §§ 547 and 550. On August 6, 2001, Transmed filed its answer, asserting the following affirmative defenses: (1) the transfers to Transmed were not interests of Debtors but rather from property held in trust by Debtors; (2) the creation of AFD Fund and delegation of avoidance power is not authorized by the Bankruptcy Code, exceeds the jurisdiction conferred by statute, and is contrary to public policy; (3) the transfers were made in the ordinary course of business, and (4) the transfers constituted new value to Debtors.

In October of 2002, Transmed filed a motion for summary judgment. Transmed averred that the transfers between December 3, 1999, and January 26, 2000, are unavoidable as a matter of law because they are (1) subject to the new value defense; (2) subject to the ordinary course of business defense, and (3) in violation of public policy. AFD Fund conceded the new value defense. *See* Plaintiff's Opposition to Motion for Summary Judgment, Dkt. No. 26, at 2. After deducting the value of Transmed's new shipments after December 3, 1999, from $963,001.30, the amount now in dispute and which AFD Fund seeks to recover is $239,366.10.

On August 19, 2003, we issued a Memorandum Opinion and Order with respect to Transmed's original motion for summary judgment. *See* Dkt. Nos. 21, 31. We found that the disputed amount of $239,366.10 was not subject to the ordinary course defense. *See* Memorandum Opinion at 10. We also denied Transmed's public policy argument and noted Transmed's remaining affirmative defenses. We declined to rule on the merits of these defenses, however, either because they were not the subject of Transmed's motion or because, *inter alia*, Transmed

had no standing. *See* Memorandum Opinion, Dkt. No. 31, at 2, nn. 3, 4. In January of 2004, after the parties failed to reach a settlement on the disputed amount of $239,366.10, we entered an order permitting the parties to address the complaint and Transmed's remaining affirmative defenses. On January 30, 2004, AFD Fund filed a motion for summary judgment, seeking avoidance and recovery of $239,336.10. AFD Fund argued that the new value and ordinary course defenses had been previously resolved by the court, and are thus *res judicata*. Furthermore, AFD Fund argued that the transfers are not subject to Transmed's two remaining affirmative defenses.

In February of 2004, Transmed filed its opposition to AFD Fund's motion for summary judgment. Transmed argued that issues of material fact exist which preclude summary judgment because (1) *res judicata* does not apply to the ordinary course defense; (2) it was ordinary for Transmed to accommodate Debtors on its payment delays; (3) AFD Fund has not satisfied § 547(b)(5) because there was no analysis as to whether Transmed received more than it would have in a Chapter 7 bankruptcy; (4) AFD Fund should have sought relief through the claims process and § 502(d), and (5) the payments were not an interest of debtor in property within the meaning of § 547(b) because they were "earmarked" by Debtors' lenders for payment to certain trade creditors.

Although we clearly denied the ordinary course defense on its merits, Transmed still chooses to revisit the issue. We find, *infra*, that the law of the case doctrine bars Transmed from raising this defense. Even in the absence of the doctrine, Transmed's arguments regarding the ordinary course defense are substantially identical to those it had asserted in the prior motion and will not be reconsidered on the

merits. The remaining affirmative defenses from Transmed's answer are now before the court: (1) the transfers paid to Transmed were not an interest of debtor in property, and (2) the creation of AFD Fund and delegation of avoidance power is not authorized by the Bankruptcy Code. In addition, we address Transmed's arguments that AFD Fund has failed to satisfy § 547(b)(5), and that § 502(d) precludes AFD Fund from pursuing this preference action.

## DISCUSSION

1. *Transmed's first remaining affirmative defense*

■ Transmed avers that the earmarking defense renders the disputed transfers outside the definition of an "interest of the debtor in property" for purposes of 11 U.S.C. § 547(b). We disagree and find that the transfers were an interest of Debtors in property within the meaning of § 547(b).

■ Section 547(b) requires, *inter alia,* that the property transferred by the debtor be an "interest of the debtor in property." The Supreme Court has interpreted this to be "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). In determining whether a transfer was "an interest of the debtor in property," courts apply the "diminution of estate doctrine," under which a transfer of an interest of the debtor occurs when a transfer "diminish[es] directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one." *In re Superior Stamp & Coin*

*Co. Inc.,* 223 F.3d 1004, 1007 (9th Cir. 2000), quoting 4 Collier on Bankruptcy, ¶ 547.03, at 547–26 (15th ed.1993).

■ In its answer to the Complaint, Transmed stated as an affirmative defense:

> The correct characterization of the Debtor's role in the transactions between the restaurants, Tricon and Transmed is ambiguous, as reflected by the contrast between Tricon's disclaimer of liability in the context of AmeriServe, its prompt guarantee of all claims post-petition, and the absence of clarifying contracts. This impacts the preference analysis in that the property paid to Transmed may not have been property of the bankruptcy estate but property held in trust by AmeriServe for the benefit of Tricon.

Answer to Complaint, Dkt. No. 8, at 2, ¶ 1. Transmed failed to raise this defense in its subsequent motion for summary judgment or the brief filed in support thereof on October 10, 2002. *See* Dkt. Nos. 21, 22. Transmed enhanced this defense in its opposition to Debtor's motion for summary judgment, dated February 19, 2004. Transmed argued that:

> The alleged preferential transfers were not an interest of the Debtors in property because such payments originated from funds that were "earmarked" by Ameriserve's lenders, pursuant to the Fourth Amended and Restated Credit Agreement (the "Credit Agreement") dated September 30, 1999 among Ameriserve, Bank of America, N.A., and other lenders thereto (the "Lenders"), for payment to certain trade creditors of Ameriserve, and as such, were merely held in trust by Ameriserve until they were paid to Transmed and other trade creditors.

Transmed Food, Inc.'s Opposition to Plaintiff's Motion for Summary Judgment, Dkt.

No. 49, at 10. Collier on Bankruptcy provides the following:

> Under the "earmarking doctrine," funds provided to a debtor for the purpose of paying a specific indebtedness may not be recoverable as a preference from the creditor to which they are paid, on the premise that the property "transferred" in such a situation was never property of the debtor and so the transfer did not disadvantage other creditors. One creditor has been substituted for another thus, when new funds are provided by the new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to the old creditor, the funds are said to be "earmarked" and the payment is held not to be a voidable preference.

5 Collier on Bankruptcy, ¶ 547.03[2], at 547–24 (15th ed.2002). The earmarking doctrine has been described as follows:

> The fundamental concept underlying the earmark doctrine is that in situations where the debtor never had actual control over certain funds or assets, said funds or assets never became part of the bankrupt's estate available for distribution to the creditors of the estate and accordingly, a transfer of those assets or funds would not be preferential.... This doctrine is almost exclusively applied where a third party loans money to a debtor for the very specific purpose of repaying a designated debt. The funds are sometimes transferred to the creditor whose obligation is being satisfied, but the court in *Coral Petroleum*[,] *Inc.* [*v. Banque Paribas-London,* 797 F.2d 1351 (5th Cir.1986)] observed that the doctrine may still apply where the debtor physically receives control of the funds but the debtor lacks dispositive control over the funds.

*In re McLean Industries, Inc.,* 132 B.R. 247, 261 (Bankr.S.D.N.Y.1991), *reversed on other grounds* 30 F.3d 385 (2nd Cir.1994), *cert. denied sub nom., U.S. Lines Reorganization Trust, Successor to U.S. Lines (S.A.), Inc. v. U.S.,* 513 U.S. 1126, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995). The central inquiry is "whether the debtor had the right to disburse the funds to whomever it wished, or whether the disbursement was limited to a particular old creditor or creditors under the agreement with the new creditor." *In re Superior Stamp and Coin Co., Inc.,* 223 F.3d 1004, 1009 (9th Cir.2000).

In the instant case, Transmed unequivocally failed to establish the first part of the test. Attached to its Opposition to Plaintiff's Motion for Summary Judgment, Dkt. No. 49, Transmed presented various exhibits including excerpts from a September 30, 1999, Credit Agreement, Exhibit F, the Debtors' Third Amended Disclosure Statement, Exhibit G, a Motion for Authority to Provisionally Pay Prepetition Claims of Essential Trade Creditors, Exhibit E, and an Affidavit of Waring S. Justis, Jr., Exhibit B, in support of its earmarking defense. None of these documents indicate an agreement between AmeriServe and its lenders that the loan was made on the condition that the loan, or even a portion of the loan, would be paid over specifically to Transmed for outstanding and unpaid debt (invoices). Transmed pointed to no language in these documents indicating any such agreement. Rather, the evidence presented indicates that the loan proceeds were used for general corporate purposes, including, but not limited to, the repayment of a number of prepetition obligations owed to critical vendors. *See* Disclosure Statement, Dkt. No. 49, Exhibit G, at 26; Justis Affidavit, Dkt. No. 49, Exhibit B, at 6–7; Critical Vendor Motion, Dkt. No. 49, Exhibit E, at 4–5. The evidence, and indeed, the actual use of the loan proceeds, indicates that Debtors had the right to disburse the proceeds to whomev-

er they wished. Debtors were not limited to repaying Transmed on account of antecedent debt. Debtors had control over the disbursement of funds under the Credit Agreement and no agreement with the Lenders required payment to Transmed. Thus, the earmarking defense is not available to Transmed. The disputed transfers are an "interest of the debtor in property" within the meaning of § 547(b).

2. *Transmed's second remaining affirmative defense*

■ Transmed avers in its answer to the Complaint:

The creation of the AFD [F]und and delegation of avoidance power is not authorized by the Bankruptcy Code, exceeds the jurisdiction conferred by statute, and is contrary to the policy of preference recovers being used for Creditors.

Answer to Complaint, Dkt. No. 8, at 2, ¶ 2. We disagree and find that AFD Fund has standing to commence the preference action on behalf of Debtors.

■ Section 1123(b)(3)(B) provides that a plan may provide for the retention and enforcement of a claim or interest by the debtor, by the trustee, *or by a representative* of the estate appointed for such purpose. According to Collier on Bankruptcy, there is a two-part test, endorsed by the Court of Appeals for the Tenth Circuit, for parties who are neither the debtor nor the trustee, but who seek to enforce a claim: (1) the party must first prove that it has been appointed, and (2) then must prove that it is a representative of the estate. 7 Collier on Bankruptcy, ¶ 1123.02[3][c], at 1123–21 (15th ed.2003), citing *Matter of Texas General Petroleum Corp.*, 52 F.3d 1330, 1335 (5th Cir.1995). The first prong of this test is satisfied if a court-approved plan of reorganization includes an appointment that is agreed to by

the debtor-in-possession and administrative creditors. *In re Sweetwater*, 884 F.2d 1323, 1326 (10th Cir.1989). In the instant case, on or about November 28, 2000, this court approved the Debtors' Third Amended Joint Liquidating Plan of Reorganization. *See* Plan at Dkt. No. 52, Exhibits A–1 through A–3. The plan expressly provides for the establishment of AFD Fund as a post-confirmation estate and states in part, "Debtors shall transfer to the Post–Confirmation Estate all of their right, title, and interest in all of the Post–Confirmation Estate Assets ... including rights and causes of action (including Bankruptcy Causes of Action) ...." *Id.* at Exhibit A–2, Plan ¶ 17.4. Avoidance and recovery are included in bankruptcy causes of action. *Id.* at Exhibit A–1, Plan ¶ 1.34.

■ The second prong of the test requires the court to decide on a "case-by-case" basis whether a successful recovery by the appointed representative would benefit the debtor's estate and, particularly, the debtor's unsecured creditors. *Cf. In re Amarex, Inc.*, 96 B.R. 330, 334 (W.D.Okla.1989)(primary concern is whether successful recovery by representative would benefit estate and particularly unsecured creditors). The benefit to the unsecured creditors has been defined broadly to include instances in which the purported representative's successful prosecution of the claim would increase the financial assets of the debtor's successor-in-interest and thereby increase the value of the ownership rights in the successor-in-interest held by the unsecured creditors. *In re Southern Industrial Banking Corp.*, 59 B.R. 638, 641 (Bankr.E.D.Tenn.1986). In contrast, where a successful recovery would only benefit the representative and not the estate or its unsecured creditors, § 1123 does not authorize such a party to prosecute a claim, in spite of plan provi-

sions that authorize that party to do so. *In re Amarex, supra,* 96 B.R. at 334.

A successful recovery by AFD Fund in the instant preference action would directly benefit this bankruptcy estate by increasing its net assets and the distribution to unsecured creditors. *See* Plan at Dkt. No. 52, Exhibit A–2, ¶¶ 12.3, 13.2. Thus, the criteria are met and AFD Fund is a representative of the estate for purposes of § 1123(b)(3)(B). *Cf. Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548, 568, 569 (3d Cir.), *cert. dismissed* 540 U.S. 1002, 124 S.Ct. 530, 157 L.Ed.2d 407 (2003). Although the Court of Appeals for the Third Circuit has not ruled specifically on this issue, in *Cybergenics* it found that § 503(b)(3)(B) "recognize[d] and reward[ed] monetarily the practice of permitting committees, with court authorization, to pursue derivative actions." 330 F.3d at 564. *See also* 11 U.S.C. §§ 1103(e)(5), 1109(b).

### 3. *Transmed's § 547(b)(5) argument*

 Section 547(g) provides that the trustee has the burden of proving the avoidability of a transfer under 11 U.S.C. § 547(b). Thus, in order to avoid a payment as preferential, AFD Fund has the burden of proof as to all the elements of § 547(b). In the instant case, the only element in dispute is § 547(b)(5). We find that AFD Fund has satisfied its burden of proof as to § 547(b)(5).

Section 547(b)(5) provides that a transfer, in order to be preferential, must enable a creditor to receive more than such creditor would receive if the case were a case under Chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of title 11. Section 547(b)(5) codifies the holding of what Collier's describes as the "seminal case" of

*Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936):

> The court in *Elliot v Frontier Properties/LP (In re Lewis W. Shurtleff, Inc.)* explained the application of the *Palmer Clay Products* analysis to section 547(b)(5): In determining the amount that an alleged preferential transfer enables the creditor to receive, the creditor must be charged what [sic] the value of what was transferred plus any additional amount that he would be entitled to receive from a Chapter 7 liquidation: net result is that, as long as the distribution in bankruptcy is less than one-hundred percent, any payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made."

5 Collier on Bankruptcy, ¶ 547.03[7], at 547–44 (15th ed.2002)(internal citations omitted). Thus, the relevant inquiry for this court is whether Transmed would have received a 100 percent payout from the estate in a Chapter 7 liquidation (the "greater percentage test"). If so, no preference can be recovered. If not, the requirements of § 547(b)(5) are met. *See In re Tire Kings of America, Inc.,* 164 B.R. 40 (Bankr.M.D.Pa., 1993).

 Bankruptcy courts generally take judicial notice of the documents in a case when making the "greater percentage" analysis. *See In re Saco Local Development Corp.,* 30 B.R. 862, 865 (Bankr.D.Me. 1983). Moreover, in calculating the "greater percentage", it is appropriate to take judicial notice of Debtors' bankruptcy case as a whole:

> A bankruptcy case is unique because it is composed of many individual parts. Within the debtor's case itself, the bankruptcy judge considers many matters which affect the amount of the dividend

to unsecured creditors, .... It would be impossible for bankruptcy judges to ignore all the other decisions they have made in a bankruptcy case and related proceedings when deciding the matter before them. In addition, bankruptcy judges would be remiss if they did not take this information into consideration. Bankruptcy judges may be the only individuals involved in a bankruptcy case with an overall view of the case. *Id* at 865.

In *In re Tire Kings, supra,* the court found that the plaintiff satisfied the burden of proof requirement based on the testimony that the liabilities of the debtor exceeded its assets on the date of the Chapter 11 petition filing. 164 B.R. at 42–43 ("Consequently, the Court finds that, on the date of the filing of the petition with the liabilities far outnumbering the assets, unsecured creditors could not possibly have received one hundred percent (100%) distribution on their claims. Consequently, the Debtor has met his burden of proof as to the preferential nature of the transfers in question").

In the instant case, the record shows no dispute that this case will not return one hundred percent to unsecured creditors. According to Debtors' Third Amended Joint Liquidating Plan of Reorganization, all remaining net recoveries shall be shared between Tricon and holders of Allowed General Unsecured Claims, according to a specified distribution, until Tricon receives $220 million. *See* Plan at Dkt. No. 52, Exhibit A–2, ¶ 12.3. Although the amount of distribution is yet unknown, both Chief Financial Officers of AFD Fund have declared that the distribution to unsecured creditors, if any, "will certainly be far less than 100%." *See* Exhibit 2, Declaration of Thomas Arnst at 3, to Plaintiff's Motion for Summary Judgment, Dkt. No. 45, and Declaration of Diana Moog at 7, Exhibit to Plaintiff's Opposition to Motion

of Transmed Foods, Inc. for Summary Judgment ... and Cross Motion for Summary Judgment, Dkt. No. 26. Inasmuch as the record indicates that Transmed would receive less than a one hundred percent dividend in the event of a Chapter 7 liquidation, Debtor has satisfied the requirements of § 547(b)(5).

### 4. *Transmed's § 502(d) argument*

■ As explained above, AFD Fund has satisfied its burden of proof as to § 547(b)(5). We will nonetheless address Transmed's argument that § 502(d) precludes this preference action. Transmed contends that AFD Fund must sue under § 502(d) rather than under § 547:

AFD should not be permitted to argue to the Court that it is too burdensome to perform the foregoing analysis and comparison of the alleged preferential payments to Transmed. AFD decided to pursue relief under § 547 of the Bankruptcy Code, rather than through the claims process and § 502(d) of the Bankruptcy Code, which would have been a more efficient means for AFD to obtain its desired relief. If AFD believes a proper § 547(b)(5) analysis is too onerous, AFD should have objected to Transmed's proof of claim and pursued its relief through § 502(d) of the Bankruptcy Code ....

Transmed Food, Inc.'s Opposition to Plaintiff's Motion for Summary Judgment, Dkt. No. 49, at 8.

Section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title,

unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

Section 502(d) addresses the allowability of a creditor's proof of claim where the creditor has received a voidable transfer, not the debtor's ability to commence a preference action where the debtor fails to object to the creditor's claim. *See In re Polaroid Corporation,* 2004 WL 1397582 (Bankr. D.Del., June 22, 2004), wherein the court reiterated its position that § 502(d) is not a bar to a preference action commenced after defendant has had a claim (dis)allowed. The parties were not precluded from stipulating as to disposition of a preference action. Further, *In re TWA Inc. Post Confirmation Estate,* 305 B.R. 221 (Bankr.D.Del.2004), the City and County of San Francisco argued that § 502(d) precluded an avoidance action by the debtor because claims were approved pursuant to a stipulation and the preference action was not raised at that time. San Francisco relied on *In re LaRoche Industries, Inc.,* 284 B.R. 406 (Bankr.D.Del.2002), where, after the claim objection proceeding resulted in allowance of the claim, debtors commenced a preference action and the court determined that, under § 502(d), if a claim is allowed there is no longer a voidable transfer due; voidable transfers have to be determined as part of the claims process. The *LaRoche* court pointed out that it would not be fair to allow debtor to object to a claim while concealing its preference cause of action. However, *TWA* noted the existence of cases that held that preference actions are not barred under § 502(d) if the debtor files such an action after the claim has been allowed. In *TWA,* the court opined that the better application of § 502(d) was not to prohibit a preference action that is commenced after a claim is allowed. This court agrees. We disagree with *In re Cambridge Industries Holdings, Inc.,* 2003 WL 22232089 (Bankr. D.Del. September 25, 2003), wherein the court stated that § 502(d) prohibits prosecution of a preference action where the claim was objected to and allowed previously. However, even if § 502(d) were to be read in that fashion, in this case there has been no objection to Transmed's claim to date. Thus, *Cambridge Industries Holdings* is inapposite. We also note *In re Ampace Corp.,* 279 B.R. 145, 163 (Bankr. D.Del.2002), in which the court ruled that § 502(d) "automatically holds up the allowance of a claim pending the preference determination." Again, this court agrees.

In the instant case, in order to benefit from § 502(d), AFD Fund must still prove the avoidability of a transfer which is a condition precedent to the operation of § 502(d).[2] This does not mean, as

---

2. Under Bankruptcy Rule 3007, when an objection to the allowance of a claim is joined with a demand for relief under Rule 7001, which includes, *inter alia,* the recovery of money or property, the matter becomes an adversary proceeding. Thus, AFD Fund could have requested § 502(d) relief in this adversary. However, it is unnecessary because § 502(d) is a mandatory provision ("the court *shall* disallow any claim of an entity ... that is a transferee of a transfer avoidable under ... 547 ...."). Section 502 has nothing to do with proof of the avoidability of the transfer. It merely recognizes that where an entity already has received more than it would have received in a Chapter 7 liquidation and has not repaid the avoided transfer to the estate, it will not be permitted any other distribution from the estate until it repays the avoided transfer. Upon repayment, the transferee then holds a claim for the amount repaid, which is to be addressed, along with any other claim it holds, in the distribution to creditors in its class. The purpose of § 502(d) is to promote the *pro rata* sharing of the bankruptcy estate among all creditors as well as the coercion of the payment of judgments obtained by the trustee.

Transmed would have us believe, that AFD Fund was *required to use § 502(d)* to resolve the dispute over the transfers. Section 547 deals with preferences. Therefore, § 502(d) does not preclude AFD Fund from commencing this preference action.

### 5. *The law of the case doctrine*

In its motion for summary judgment, Transmed argued that the transfers are subject to the ordinary course defense because, *inter alia*, the billing and payment practices remained relatively constant during the preference period. In its opposition, AFD Fund disputed Transmed's ordinary course defense. AFD Fund argued that payments were not made in the ordinary course of business within the meaning of § 547(c)(2)(B) because the timing of its invoice payments during the preference period (78 days) significantly exceeded the timing of invoice payments prior to the preference period (26.7 days). *See* Plaintiff's Opposition to Summary Judgment, Dkt. No. 26, at 9. After conducting our own analysis of Exhibit A to Transmed's brief in support of its motion for summary judgment, Dkt. No. 21, we agreed with AFD Fund that the parties' payment history during the preference period was not consistent with their prior practice. Consequently, we found that the remaining disputed amount of $239,366.10 was not subject to the ordinary course defense, and denied Transmed's motion in this regard. *See* Memorandum Opinion, Dkt. No. 31, at 10.

Transmed argues that *res judicata* does not preclude it from re-asserting the ordinary course of business defense because "res judicata applies only to a final judgment on the merits, and is therefore, inapplicable to the denial of summary judgment." *See* Transmed Food, Inc.'s Opposition to Plaintiff's Motion for Summary Judgment, Dkt. No. 49, at 3, quoting *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 922 F.2d 164, 167 (2nd Cir.1991). This argument misses the point inasmuch as we clearly denied the ordinary course defense on its merits, and not through procedural or technical grounds. In fact, the only issue before the court in the previous summary judgment proceeding concerned the ordinary course defense, as the parties had agreed on the new value defense. We believe, however, that both parties have confused the application of *res judicata* with the law of the case doctrine and write only to clarify this matter.

The modern interpretation of *res judicata* uses the term "claim preclusion." Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. A related concept is "issue preclusion", which generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim. *See New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968, *rehearing denied* 533 U.S. 968, 122 S.Ct. 10, 150 L.Ed.2d 793 (2001), citing Restatement (Second) of Judgments §§ 17, 27 (1982); D. Shapiro, Civil Procedure: Preclusion in Civil Actions 32, 46 (2001). Both claim and issue preclusion are concerned with whether a judgment in one suit precludes the same parties from litigating in a subsequent and separate suit. Under claim preclusion, a judgment on the

*See* 5 Collier on Bankruptcy, ¶ 502.05[2][a], at 502–58 (15th ed.).

merits in a prior suit bars a second suit involving the same parties based on the same cause of action. Under issue preclusion, the second suit is based upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. *Baker v. General Motors Corp.*, 522 U.S. 222, 233, n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998).

■■■■ Neither claim nor issue preclusion applies to this summary judgment motion as this motion is the second stage of the same preference action. Rather, the law of the case doctrine applies to this proceeding because it is concerned with whether a ruling in one stage of the same litigation governs in later stages. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case . . . . This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citations omitted).

■■■■ The Court of Appeals for the Third Circuit has recognized three exceptions to the law of the case doctrine that permit reconsideration of an issue previously decided in a case. First, a successor judge may entertain a timely motion to reconsider the conclusions of an unavailable predecessor. *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3rd Cir.1982). Second, an exception also exists when new evidence is available the second time the issue is raised. *Id.* Finally, a court can reconsider a previous ruling when a supervening decision has changed an applicable rule of law. *Id.* at 170. In a footnote the Court of Appeals for the Third Circuit pointed out that some courts recognize that "the first decision need not be followed in all subsequent proceedings if 'the decision was clearly erroneous and would work a manifest injustice.'" *Id.* at n. 10 (citations omitted). None of these exceptions apply to this case. Although Transmed submitted a new affidavit by Waring S. Justis in support of the ordinary course defense, this evidence could have been submitted when Transmed filed its motion for summary judgment on October 10, 2002 (Dkt. No. 21). Furthermore, the crux of Transmed's argument, even in light of the new evidence, remains the same: Transmed made accommodations for Debtor's late payments, which were due to computer-related problems, and therefore the ordinary course defense renders the disputed payments unavoidable. *See* Transmed's Opposition to Plaintiff's Motion for Summary Judgment, Dkt. No. 49, at 6. As noted above, we rejected Transmed's defense based on our comparison of the payment history during the preference period with that of the pre-preference period: "However, during the preference period, payment aging skyrocketed to an average of 78 days between invoice and payment dates. We find that the remaining payments in the amount of $239,366.10 made to Transmed during the preference period and not subject to the new value defense were not in the ordinary course of the parties' business . . . ." Memorandum Opinion of August 18, 2003, at 10, Dkt. No. 31.

The law of the case doctrine applies to this case. Transmed is bound by this Court's previous decision denying the ordinary course defense and is precluded from re-asserting this defense.

## CONCLUSION

We find that the transfers in dispute are not subject to Transmed's remaining affirmative defenses. We also find that AFD

Fund has satisfied its burden of proof as to § 547(b)(5) and that AFD Fund was not required to resolve the instant matter under § 502(d). Therefore, we will grant AFD Fund's motion for summary judgment. Pursuant to §§ 547 and 550, payments to Transmed in the amount of $239,336.10 are avoidable.

An appropriate order will be entered.

## JUDGMENT ORDER

**AND NOW**, this 28th day of September, 2004, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED,** and **DECREED** that the motion for summary judgment of Plaintiff AFD Fund is **GRANTED**. Judgment in the amount of $239,366.10 is entered in favor of Plaintiff AFD Fund and against Defendant Transmed Foods, Inc.

It is **FURTHER ORDERED** that the Clerk shall close this adversary.