384

IN RE: VASO ACTIVE
PHARMACEUTICALS,
INC., Debtors.

Jeoffrey L. Burtch, Avoidance
Action Trustee, Plaintiff,

v.

John J. Masiz, and Joseph F.
Frattaroli, Defendants.

Case No. 10–10855 (CSS)
Adv. Pro. No. 11–52005 (CSS)

United States Bankruptcy
Court, D. Delaware.

October 15, 2013

Cooch and Taylor, P.A., Robert W. Pedigo, The Brandywine Building, 100 West Street, 10th Floor, Wilmington, DE 19899–1680, Counsel to Jeffrey L. Burtch, Avoidance Action Trustee.

Cross & Simon, Christopher P. Simon, Kevin S. Mann, P.O. Box 1380, Wilmington, DE 19899–1380, Counsel to John Masiz.

McCarter & English, LLP, William F. Taylor, Jr., Kate Roggio Buck, 405 N. King Street, 8th Floor, Wilmington, DE 19801 and Thomas Curran, McCarter & English, LLP, 265 Franklin Street, Boston, MA 02110, Counsel for Defendant John J. Masiz.

Chapter 11

*OPINION*[1]

Sontchi, J.

### *INTRODUCTION*

Before the Court is a second motion for partial summary judgment filed by Plaintiff, a litigation trustee appointed under Debtor's confirmed plan of reorganization, against a former officer and director of Debtor. Plaintiff seeks to recover payments made by Debtor to Defendant in the weeks prior to Debtor's bankruptcy from the proceeds of a settlement payable to the Debtor.

---

1. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Plaintiff's first motion for partial summary judgment, filed on July 13, 2011, sought to recover these payments as fraudulent conveyances.[2] That motion was denied, however, in part, as to this particular Defendant.[3] Consequently, Plaintiff now seeks to recover these payments as avoidable preferences under 11 U.S.C. § 547.

Plaintiff's motion will be granted.

## *JURISDICTION*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court has the judicial power to enter a final order.

## *STATEMENT OF FACTS*

### I. Procedural History

On March 11, 2010 (the "Petition Date"), Vaso Active Pharmaceuticals, Inc. (the "Debtor" or "Vaso") commenced its reorganization by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. An adversary action against Iroquois Master Fund, Ltd., Vaso's secured lender, was filed and thereafter settled with approval by this Court (the "Iroquois Settlement Order").[4] The Iroquois Settlement Order included the following representation:

2. The Opinion resolving the first summary judgment motion can be found at *In re Vaso Active Pharm., Inc.*, No. 10–10855, 2012 WL 4793241 (Bankr.D.Del. Oct. 9, 2012).

3. The first motion for partial summary judgment was filed against this Defendant as well as another former officer and director of the Debtor. While the motion was denied against this Defendant, it granted the motion against the other former officer.

4. Adv. Pro. No. 10–50835.

Joseph Frattaroli and John Masiz hereby represent and warrant that they have not and will not in the future fraudulently transfer any of their assets, including without limitation the cash payments they received from the Debtor in December 2009 from the Settlement Funds, outside the reach of creditors.[5]

On October 2, 2010, Vaso filed its Second Amended Chapter 11 Plan of Reorganization[6] which was confirmed by the Court in November 2010.[7] Pursuant to the confirmation order, Jeoffrey L. Burtch (the "Trustee" or "Plaintiff") was appointed as the Avoidance Action Trustee (as defined in the Plan) pursuant to 11 U.S.C. §§ 321–33, and was assigned all avoidance actions and other claims under 11 U.S.C. §§ 544, 547, 548 and 550 to pursue for the benefit of Vaso's creditors.

Thereafter, on May 20, 2011, the Trustee commenced this present adversary proceeding (via the Complaint) against John J. Masiz ("Masiz") and Joseph F. Frattaroli ("Frattaroli," and together with Masiz, the "Defendants") seeking, among other things, avoidance of preferential transfers, avoidance of fraudulent transfers (under multiple federal and state theories), disallowance of claims, and unjust enrichment.[8] Within weeks of Defendants' Answer to the Complaint,[9] the Trustee filed a motion for partial summary judgment as to whether transfers made to

5. *Id.*, D.I. 20. at ¶¶ 2, 9.

6. Del. Bankr. No. 10–10855, D.I. 96.

7. *Id.*, D.I. 116.

8. Adv. P. No. 11–52005, D.I. 1 (Unless otherwise noted, all docket references are to the adversary docket which is the subject of this motion, Adv. P. No. 11–52005).

9. D.I. 5.

Defendants were fraudulent conveyances.[10] On October 9, 2012, this Court entered findings of fact and conclusions of law in its Opinion and Order (the "Opinion"), granting, in part, and denying, in part, the first motion.[11] More specifically, the motion was granted against Frattaroli under Count VII of the Complaint.[12] While the Opinion granted partial summary judgment against Masiz on certain elements of various causes of action in the Complaint, it did not find all the required elements for any one cause of action.[13]

Based on the Opinion, the Court entered summary judgment (the "Judgment") on December 19, 2012, in favor of the Trustee against John J. Masiz only, as to the following:

a) Denying the applicability of the earmarking defense;

b) ... [Masiz] received Five Hundred Ninety Eight Thousand and 00/100 Dollars ($598,000.00) directly from the Robinson & Cole settlement, and subsequent payments from Vaso of One Hundred Seventy Eight Thousand Three Hundred Sixty Three and 00/100 Dollars ($178,363.00) (the "Transfers");

c) Masiz concealed the nature and existence of the Transfers from Debtor's creditors at the time the Transfers were made;

d) As of the date of the Transfers and the Petition Date of Debtor, substantially all of Debtor's assets were transferred to Masiz and Frattaroli;

e) Masiz concealed assets by not disclosing to Iroquois or Debtor's other creditors ... the terms and amount of the [settlement] proceeds ... payments [made] under the Kell[e]y Drye Settlement Agreement; and ... the basis for and the amount of the payments of Debtor's assets to Frattaroli and Masiz;

f) The Debtor was insolvent at the time of the Transfers and Masiz knew at the time of the Transfers that Debtor was insolvent;

g) Masiz paid himself ahead of Debtor's other creditors with intent to hinder, delay [or] defraud those creditors;

h) Masiz lacked good faith in connection with the Transfers of part of the Robinson & Cole settlement to himself;

j) At the time of the transfer to Debtor, Masiz knew that the Debtor had insufficient capital and had intent to incur debt beyond the Debtor's ability to pay.[14]

Masiz promptly filed a Notice of Appeal of the Judgment to the United States District Court for the District of Delaware on January 2, 2013.[15] That appeal remains pending.

Separately, Defendants filed a Motion to Dismiss the Complaint due to lack of standing on November 6, 2012.[16] The motion to dismiss was denied by this Court through an order on April 25, 2013.[17]

On January 3, 2013, the Trustee filed Plaintiff's Motion for Partial Summary Judgment on Section 547 Against John J. Masiz.[18]

10. D.I. 6 and 7.

11. *Vaso*, 2012 WL 4793241; D.I. 24 and 25.

12. *See* D.I. 25.

13. *See Vaso*, 2012 WL 4793241 at *24.

14. D.I. 58.

15. D.I. 60. For the designation and respective counter-designation of items for inclusion in record on appeal, *see* D.I. 77 and 84.

16. D.I. 29.

17. D.I. 101.

18. D.I. 64.

## II. Factual History [19]

Vaso Active Pharmaceuticals, Inc. commercialized over-the-counter pharmaceutical products developed by BioChemics, Inc., a company founded and majority-owned and controlled by Masiz. Bio-Chemics, Inc., in turn, controls 77 percent of the voting interest in Vaso, which was founded by Masiz in 2001. In 2003, Vaso engaged Robinson & Cole LLP to represent it in connection with an initial public offering ("IPO") of its stock, which was completed in 2003. Thereafter, Vaso and Masiz were involved in 16 securities class action lawsuits and a SEC lawsuit related to the IPO, allegedly caused by Robinson & Cole LLP's negligent legal advice made in connection with the IPO. Vaso settled these lawsuits and, as a part of a settlement with the SEC, Masiz agreed to refrain from serving as an officer or director of a public company, including Vaso, for five years. Nonetheless, Masiz remained at Vaso as a "corporate strategist," at the same salary he had been receiving as an officer of Vaso. Although Masiz could no longer sign documents and bind Vaso, Masiz remained active and handled business dealings, including dealing with creditors.

Due to Vaso's financial difficulty, Masiz agreed to work at Vaso without compensation beginning April 2006.[20] Frattaroli has testified that, during the pendency of the litigation against Robinson & Cole LLP, Vaso's independent Board of Directors approved an arrangement between Vaso and Defendants whereby Masiz and Frattaroli would only receive payment "in consideration of their uncompensated services rendered to Vaso, if, and only if, Vaso was successful" in the litigation.[21] Frattaroli has also testified that by working without compensation during Vaso's financial difficulties, Defendants collectively saved Vaso over $900,000.[22]

In determining the market value of the services rendered by Defendants, Frattaroli engaged the expertise of outside consultants (principals at placement firms in the Boston area) who advised that Frattaroli should expect to make $175,000 per year at Vaso, with an additional yearly bonus of $50,000.[23] Frattaroli has testified that Vaso's Board of Directors reviewed the consultant report and determined that a $175,000 per year salary, plus a $50,000 bonus, was an appropriate valuation of the services that both Frattaroli and Masiz rendered to Vaso, setting it as both Masiz and Frattaroli s annual salary figure.[24]

In November 2006, Vaso brought a legal malpractice action against Robinson & Cole LLP in the Superior Court of the Commonwealth of Massachusetts.[25] This case was settled in December 2009 and Vaso received a payment of $2.5 million under the settlement agreement.[26] The lawyers who had represented Vaso in the malpractice suit, Kelley Drye & Warren LLP ("Kelley Drye"),[27] were paid $595,000

---

19. This is a summary of the facts relevant only to this motion. For a complete factual history, please see, *Vaso*, 2012 WL 4793241, at *3–6.

20. Frattaroli Aff., D.I. 13–2 at ¶ 9.

21. *Id.* at ¶ 19.

22. *Id.* at ¶ 12.

23. *Id.* at ¶ 21.

24. *Id.* at ¶ 22.

25. *Id.* at ¶ 23.

26. *Id.* at ¶ 39.

27. In its malpractice suit against Robinson & Cole LLP, Kelley Drye had agreed to represent Vaso pursuant to a Fee Agreement, under which Kelley Drye was to receive (a) 100% of its fees and (b) 25% of any remaining recovery after the payment of its fees. Under the Kelley Drye Fee Agreement, Kelley Drye would have received $1,833,000 of the $2.5 million in settlement proceeds from Robinson

out of these settlement funds, while the remainder of $1,905,000, was paid to Vaso.

Out of the $1,905,000 in settlement proceeds received on December 29, 2009,[28] Vaso immediately paid $598,000 to Masiz and $306,000 to Frattaroli.[29] Vaso subsequently (but prior to the date of the petition) paid $178,363 to Masiz and $16,827 to Frattaroli.[30] At this time, virtually all of the cash in Debtor's possession came from the proceeds of the settlement with Robinson & Cole LLP.

The total amount of the first and second payments made to Masiz from Vaso's settlement proceeds is $776,363.00. It is these two payments the Trustee is attempting to recover as preferences.

## LEGAL DISCUSSION

### I. Legal Standard: Summary Judgment

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,"[31] after considering the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits."[32]

In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the nonmoving party.[33] After sufficient proof has been presented to support the motion, the burden shifts to the nonmoving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate.[34] A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[35]

In order to demonstrate the existence of a genuine issue of material fact in a jury trial, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant.[36] The same principles apply in a bench trial where the judge is the ultimate trier of fact; the nonmovant must obviate an adequate showing to the judge to find for the

& Cole LLP. However, on December 24, 2009, Vaso and Kelley Drye executed a separate settlement agreement, in which Kelley Drye accepted $595,000 payment in full satisfaction of the fees and other charges owing to it by Vaso, and Robinson & Cole LLP were to make payment of the remainder to Vaso, "acknowledging that [Vaso] intends to pay $904,000, as part of the conditions of this Settlement [Agreement], to [Masiz and Frattaroli] in respect of the [Company's outstanding payments for salary and wages earned by Defendants.]." See D.I. 13–2, Exh. A.

**28.** D.I. 1, Exh. B., Frattaroli Depo. pp. 88:18–89:17.

**29.** Frattaroli Aff., D.I. 13–2 at ¶ 43.

**30.** Memorandum of Points and Authorities in Support of Plaintiff's First Motion, D.I. 7–1,

Exh. 5 (Amended Statement of Financial Affairs, Bates stamp PL000074, PL000081).

**31.** Fed.R.Civ.P. 56(a).

**32.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**33.** *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

**34.** *Id.* at 587, 106 S.Ct. 1348.

**35.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**36.** *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996).

nonmovant.[37] In a situation where there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party.[38]

## II. Avoidance of Preferential Transfers under Section 547 (Count I of the Complaint)

Under 11 U.S.C. § 547(b), Congress "broadly authorized bankruptcy trustees to 'avoid any transfer of an interest of the debtor in property' *if* five conditions are satisfied and *unless* one of seven exceptions defined in subsection (c) is applicable."[39] The five conditions required are listed in section 537(b)(1)–(5) as follows:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b).[40] In addition, 11 U.S.C. § 547(g) places the burden of proof for these elements on the Trustee.

First, section 547(b)(1) requires that the transfer be "to or for the benefit of a creditor." This requirement has been loosely construed by the courts.[41] The Code defines a creditor as an "entity that has a claim against the debtor."[42] A "claim" is defined as a "right to payment."[43] Finally, a "payment" is a "performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."[44] Here, Masiz has testified to receiving the transfers in connection with the settlement.[45] The Kelley Drye Settlement Agreement also acknowledges that the first payment was to be paid "to the

---

37. *In re Broadstripe, LLC*, 444 B.R. 51, 76–77 (Bankr.D.Del.2010) (citing *Leonard v. General Motors Corp. (In re Headquarters Dodge)*, 13 F.3d 674, 679 (3d Cir.1993).

38. *Id.* at 77–78 (citing *Celotex Corp.*, 477 U.S. at 317–18, 106 S.Ct. 2548).

39. *Union Bank v. Wolas*, 502 U.S. 151, 154, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) (italics in original).

40. *Waslow v. The Interpublic Group of Cos., Inc. (In re M Group, Inc.)*, 308 B.R. 697, 700 (Bankr.D.Del.2004); *In re IT Grp., Inc.*, 331 B.R. 597, 601 (Bankr.D.Del.2005).

41. *In re CVEO Corp.*, 327 B.R. 210, 214 (Bankr.D.Del.2005).

42. 11 U.S.C. § 101(10).

43. 11 U.S.C § 101(5)(A).

44. *In re Bake–Line Grp., LLC*, 359 B.R. 566, 577 (Bankr.D.Del.2007) (quoting Black's Law Dictionary 1165 (8th ed. 2004)).

45. Masiz Aff., D.I. 13–1 at ¶¶ 21, 22.

Employees in respect of Employee Claims."[46] Finally, Masiz has also testified that the first payment was made in satisfaction of "back wage claims,"[47] and deemed the second payment as "payment of ... wages,"[48] classifying himself as a creditor holding wage claims.[49] Thus, the transfers were made to a creditor.

██ Second, section 547(b)(2) requires that the transfer be "for or on account of an antecedent debt" owed by Debtor before such transfer was made. A debt is antecedent for the purposes of Section 547(b) if it was incurred before the debtor made the allegedly preferential transfer.[50] In addition, a debt is deemed to have been incurred "on the date upon which the debtor first becomes legally bound to pay."[51] While Frattaroli has testified that no accrual of wages occurred,[52] the Court found in the Opinion that Masiz and Frattaroli both had a claim against Debtor at the time of the transfers, based on the accrual of unpaid wages.[53] Additionally, Masiz has characterized the transfers as a satisfaction of "outstanding obligations and liabilities" on the part of the company.[54] Thus, the payments were made on account of a debt incurred before the transfer.

Third, the debtor must be insolvent at the time of the transfers. The term insolvent is defined in the Bankruptcy Code generally to mean a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation."[55] Here, Defendants concede that Debtor was insolvent at the time the transfers were made.[56] As a result, both the federal and state tests for insolvency[57] have been satisfied in this instance.

46. Opposition to the first motion, D.I. 13–2, Exh. A.

47. Masiz Depo., D.I. 1, Exh. A, pp. 85:10–21.

48. Masiz Aff., D.I. 13–1 at ¶ 22. While Masiz has testified that the Second Payment was made as a "regular" payment of wages, as a "week or two" of pay (*see* Masiz Depo., D.I. 1, Exh. A, pp. 60:17–20), Masiz received $178,363 in the Second Payment, which is roughly equivalent to 1 year and 1 weeks' worth of pay. Frattaroli, on the other hand, received only $16,827 in the Second Payment, which is precisely equivalent to five weeks' worth of regular pay.

49. *See Vaso*, 2012 WL 4793241 at *22 ("The record clearly supports that while the transfers were paid at the time of the settlement that was simply because that was the first time Debtor had sufficient funds to make the transfers. The right or basis for payment, however, was based on the accrual of unpaid wages. Thus, Masiz and Frattaroli both had a claim against Debtor at the time of the transfers. Whether that claim would have been allowed in whole or in part or how it would be classified is irrelevant.")

50. *Peltz v. New Age Consulting Servs., Inc.,* 279 B.R. 99, 102 (Bankr.D.Del.2002).

51. *Id. Accord In re CVEO Corp.,* 327 B.R. at 214.

52. Frattaroli Aff., D.I. 13–2 at ¶¶ 13–15. *But see* Frattaroli Depo., D.I. 1, Exh. B, p. 90:12–24.

53. *Vaso*, 2012 WL 4793241 at *22.

54. Masiz Depo., D.I. 1, Exh. A, pp. 84:20, 86:13–18. *See id.* pp. 59:3–60:21 as follows:

Q. So, as far as you understand it, you're accruing compensation at the rate of $175,000 per annum?
A. Yes ...
Q. So you began to accrue compensation again after [a lump sum distribution from the Robinson & Cole settlement proceedings]?
A. Yes
*See also supra* note 49.

55. 11 U.S.C. § 101(32)(A).

56. Defendants' Opposition to the First Motion, D.I. 13, pp. 26–27.

57. 11 U.S.C. § 548(a)(1)(B)(ii) and 6 Del. C. § 1304(a)(2).

Fourth, the transfer must occur within the voidable preference period: on or within 90 days before the date of the filing of the petition, or within one year if transfers were made to company insiders. While there remains a genuine issue of material fact as to whether Masiz was a company insider,[58] the filing of the bankruptcy petition occurred on March 11, 2010.[59] As a result, any payments made on or after December 11, 2009 were within 90 days of bankruptcy. As the first payment to Masiz occurred on December 29, 2009,[60] and the second payment was made thereafter, once Vaso was "infused with ... working capital," from the settlement,[61] both transfers were within the ninety-day preference period under section 547(b)(4)(A).

Fifth, under section 547(b)(5), an avoidable transfer must enable a creditor to receive more than such creditor would receive if the case were a case under Chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of Title 11. The Supreme Court has held that whether a particular transfer is preferential should be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results."[62] The resulting analysis therefore requires that in determining the amount that the transfer "enables [the] creditor to receive," such creditor must be charged with the value of what was transferred *plus* any additional amount that he would be entitled to receive from a Chapter 7 liquidation:

> The net result is that, as long as the distribution in bankruptcy is less than one-hundred percent, any payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.[63]

Thus, the relevant inquiry for this Court is whether Masiz would have received a 100 percent payout in a Chapter 7 liquidation. If so, no preference can be recovered; if not, the requirements of Section 547(b)(5) are met.[64] In performing this analysis, bankruptcy courts generally take judicial notice of the documents in a case, and it is also appropriate to take judicial notice of the Debtors' bankruptcy case as a whole.[65]

Here, there can be no dispute that this case will not return one hundred percent to unsecured creditors. While part of Masiz's claim may be entitled to priority under section 507(a)(4),[66] the vast remain-

---

58. *Vaso*, 2012 WL 4793241 at *10–12.

59. Del. Bankr. No. 10–10855, D.I. 1.

60. Masiz Depo., D.I. 1, Exh. A, pp. 89:4–14.

61. Masiz Aff., D.I. 13–1 at ¶ 22; Frattaroli Aff., D.I. 13–2 at ¶ 45.

62. *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936).

63. *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir.1985); *In re AmeriServe Food Distribution, Inc.*, 315 B.R. 24, 32 (Bankr.D.Del.2004); *Matter of Total Technical Servs., Inc.*, 150 B.R. 893, 903 (Bankr.D.Del. 1993).

64. *See In re AmeriServe*, 315 B.R. at 32.

65. *See id.*, 315 B.R. at 32–33.

66. Under this section, unsecured claims earned within 180 days before the date of the filing of the petition for wages, salaries, or commissions are given priority, but only to the extent of $10,950 for each individual or corporation. (11 U.S.C.A. § 507, effective April 1, 2007 to March 31, 2010. The dollar amount is adjusted every three years by the Judicial Conference of the United States, as

der of the transfers would be considered as a general unsecured claim. Masiz has recognized this.[67] Moreover, the Debtor formerly stated that:

> If the Chapter 11 Case were converted to Chapter 7, unsecured creditors would not receive any proceeds from the liquidation of such assets ... The Debtor believes that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for under the Plan because ... [ ] In a chapter 7 liquidation, the Debtor believes that distributions to secured creditors would be minimal, and unsecured creditors would receive no distribution on account of their claims.[68]

As a matter of general arithmetic, any transfer to a general unsecured creditor ordinarily satisfies this test unless the debtor's estate turns out to be solvent in Chapter 7.[69] Consequently, inasmuch as the record here shows that Masiz, as an unsecured creditor, would receive less than one hundred percent of his claim in the event of a Chapter 7 liquidation, the re-

quirements of section 547(b)(5) have been satisfied.[70]

## III. Affirmative Defenses [71]

Under 11 U.S.C § 547(g), the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under section 547(c). Thus, Masiz holds the burden of proving the nonavoidability of the transfers in any of his section 547(c) defenses.

### A. Subsequent and Contemporaneous Value

■ Masiz has asserted a new value defense under section 547(c)(4), which provides that a trustee may not avoid a transfer:

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> > (A) not secured by an otherwise unavoidable security interest; and

---

set forth in 11 U.S.C. § 104, to reflect changes in the Consumer Price Index. Vaso's voluntary Chapter 11 petition was filed on March 11, 2010).

67. *See* D.I. 79, p. 12.

68. Del. Bankr. No. 10–10855, D.I. 97, Second Amended Disclosure Statement Relating to the Chapter 11 Plan of Reorganization for Vaso Active Pharmaceuticals, Inc., p. 38.

69. George M. Treister et al., FUNDAMENTALS OF BANKRUPTCY LAW § 4.03(c)(1)(G) (6th ed. 2006).

70. *See In re Ameriserve*, 315 B.R. at 33 (accepting the declaration by the CFOs that the distribution to unsecured creditors will "certainly be far less than 100%" according to the Plan, despite that the amount of distribution was yet unknown).

71. The first three defenses which are analyzed below are the ones raised by Masiz in his Answering Brief to this motion, D.I. 110. The

last defense, regarding timeliness, was raised in Masiz's Opposition to this motion, D.I. 79. Masiz also raised a question of standing with regard to the Trustee in his Opposition. A separate Motion to Dismiss the Complaint Due to Lack of Standing addressing the same issue was filed by Defendants on November 6, 2012, *see* D.I. 26, but was denied after a hearing on the issue, *see Order Denying Defendant's Motion to Dismiss the Complaint Due to Lack of Standing*, D.I. 101.

Separately, in his Answering Brief to this motion, D.I. 110, Masiz also raised an argument that the facts under Count I of the Complaint assume that Masiz was an insider of the Debtor, which is actually a disputed material fact. This argument, however, is irrelevant. As shown by the analysis above, it was unnecessary for Plaintiff here to prove insider status to satisfy section 547(b)(4), because the transfers at issue occurred within the 90–day preference period before the date of the bankruptcy petition.

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; [72]

The subsequent new value defense is intended to encourage creditors to work with companies on the verge of insolvency.[73] In addition, it is designed to ameliorate the unfairness of allowing the trustee to avoid all transfers made by a debtor to a creditor during the preference period without giving any corresponding credit for advances of new value that benefitted the debtor.[74]

■■■■ "New value" is defined as "money or money's worth in goods, services, or new credit ... that is neither void nor voidable by the debtor or the trustee under any applicable law."[75] Creditors are entitled to "set off the amount of 'new value' which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received."[76] In making an analysis of payments, however, one need not "link specific invoices to specific payments ... [r]ather, one need only track the debits and credits generally."[77] One should only look to the "net result—the extent to which the creditor was preferred, taking account of the new value the creditor extended to the debtor after repayment on old loans."

■■■■ Here, two payments have been made to Masiz: a first payment of $598,000 immediately after settlement proceeds were received, and a subsequent second payment of $178,363 before the date of the petition. The Trustee has conceded that some new value may have been infused into the company with Masiz providing employment services between December 30, 2009 and March 11, 2010.[78] Masiz disputes the amount of the new value.[79]

As a result of the first payment of $598,000, Masiz's preference exposure was that amount. Assuming that Masiz subsequently provided the company with new value for ten weeks of employment services (more precisely, 72 days), this would leave him with a preference exposure of $598,000 less the value of these services. For purposes of summary judgment, the value of Masiz's services to the Debtor was $175,000 per annum. Assuming, as one must, that Masiz provided services to the Debtor from December 29, 2009 though the Petition Date of March 11, 2010 (a total of 72 days), Masiz provided subsequent new value to the Debtor of $34,520.55.[80] Thus, Masiz's total preference liability after full application of the subsequent new value defense is $741,842.45 ($598,000 minus $34,520.55 plus $178,363).

As appropriate in a motion for summary judgment, the Court finds that Masiz provided 72 days of subsequent new value to the Debtor at his normal rate of salary of $175,000 per annum. But, Masiz cannot establish, even under the summary judgment standard, that he provided new value in excess of that amount. Recall that,

---

72. 11 U.S.C. § 547(c)(4).

73. *In re Friedman's Inc.*, No. 09–10161, 2011 WL 5975283 (Bankr.D.Del. Nov. 30, 2011).

74. *Id.*

75. 11 U.S.C. § 547(a)(2).

76. *In re New York City Shoes, Inc.*, 880 F.2d 679, 680 (3d Cir.1989).

77. *In re Sierra Concrete Design, Inc.*, 463 B.R. 302, 307 (Bankr.D.Del.2012).

78. D.I. 65, p. 17.

79. *See* D.I. 110, p. 13.

80. 72 days is 19.73% of one year. 19.73% of $175,000 equals $34,520.55.

under 11 U.S.C. § 547(g), Masiz has the burden of proving the nonavoidability of a transfer in any of the section 547(c) defenses, yet he has not gone so far as to plead or demonstrate the presence or existence of any new value actually being given to the company other than his normal wage.[81] Thus, for purposes of this motion, Masiz is entitled to a defense under section 547(c)(4) in the amount of $34,520,55. Or, put another way, Plaintiff is entitled to summary judgment after application of the subsequent new value defense in the amount of $741,842.45.

◼ Masiz has also alleged a new value defense under section 547(c)(1), stating that "[n]o recovery should be had from Defendants on any otherwise avoidable preferential transfer because such transfers involved contemporaneous exchanges for new value given to the Debtor."[82] To prevail on a "contemporaneous exchange for new value" defense under section 547(c)(1), a defendant must prove that: (1) it extended new value to the debtors; (2) the parties intended the new value and the disputed transfers to be contemporaneous exchanges; and (3) the exchanges were, in fact, substantially contemporaneous.[83]

◼ Here, the defense cannot stand with respect to the first payment, which was not intended to be a payment in exchange for contemporaneously given value, but instead a payment for unpaid wages which had accrued under sections 547(b)(1) and (2). With respect to the second payment, Plaintiff has, as aforementioned, conceded that some new value was provided to Vaso for Masiz's employment services between December 30, 2009 and March 11, 2010.[84] Nonetheless, "section 547(c)(1) protects transfers only 'to the extent' the transfer was a contemporaneous exchange for new value ... [t]his provision [thus] indicates that a creditor seeking the protection of [s]ection 547(c)(1) must prove with specificity the new value given to the debtor."[85] Without pleading as such, and without indicating that the parties intended the second payment to compensate for a contemporaneous exchange of new value and that the exchanges were in fact contemporaneous, Masiz has also failed to sustain his burden of creating a genuine issue of material fact with respect to a contemporaneous-exchange new value defense.[86]

## B. Unallowable Pre–Petition Default in Assumed Contracts

◼ Masiz also argues that to the extent any transfers were made during the

---

81. In describing this affirmative defense, Masiz's Answer states that "Defendants gave new value to or for the benefit of the Debtor," without detailing what the new value entailed (D.I. 5, p. 46). In Masiz's Answering Brief in Opposition of this motion, in support of his new value defense, it is alleged that Masiz "could have worked overtime, weekends ... more than his usual hours," but does not allege any other facts (D.I. 110, p. 9).

82. Answer to Compl., D.I. 5, p. 46.

83. *In re APS Holding Corp.*, 282 B.R. 795, 800 (Bankr.D.Del.2002).

84. D.I. 65, p. 17.

85. *In re Jet Florida Sys., Inc.*, 861 F.2d 1555, 1558–59 (11th Cir.1988) (discussed and accepted as controlling in the Third Circuit within the case of *In re Spada*, 903 F.2d 971, 977 (3d Cir.1990)).

86. *Cf. In re Hayes Lemmerz Int'l, Inc.*, 329 B.R. 136, 140 (Bankr.D.Del.2005) ("The defendant has the burden of establishing [all of the Section 547(c)(1)] elements. 11 U.S.C. § 547(g) ... The Defendant failed to provide evidence on these points. Accordingly, the Court lacks the essential ingredients to the contemporaneousness stew. Without them, the Court can not grant summary judgment, as the moving party has the initial burden of showing that it is entitled to relief.").

voidable preference period under contracts that were assumed, such payments cannot be returned as it would create an "unallowable pre-petition default in assumed contracts." [87] Under section 365, the Bankruptcy Code authorizes the trustee to assume or reject executory contracts, enabling the trustee to maximize the value of the debtor's estate by assuming executory contracts that benefit the estate and rejecting those that do not.[88] The assumption of a contract under this section bars the later avoidance of pre-petition transfers related to the assumed contract under section 547.[89] Court approval, however, is generally viewed as a prerequisite to any debtor's assumption of an executory contract.[90] "In order to [ensure] that a debtor has the opportunity to assess the advantages and disadvantages of assuming a contract, assumption must be approved. It cannot be presumed." [91]

Here, Masiz argues that "the Trustee [fails] to provide undisputed facts that Masiz's employment contract was not assumed, presumably through the Plan." [92] The Second Amended Chapter 11 Plan of Reorganization for Vaso, however, does not provide for the assumption of any executory contracts. In particular, the Plan specifically states that "any Executory Contract which has not expired by its own terms on or prior to the Confirmation shall be deemed rejected by the Reorganized Debtor effective on the Confirmation Date . . ." [93] Moreover, Defendants themselves have argued that at the time the transfers were made, "Masiz's employment contract with the Debtor had expired . . . Additionally the Settlement Transfers were not pursuant to an employment contract as such transfers were made on account of a separate agreement between the Defendants and the Board of Directors . . ." [94]

Nothing contained in the record remotely supports any finding let alone raises a genuine issue of material fact as to whether the transfers were made pursuant to an employment agreement, or that any such employment agreement was later assumed and approved post-petition. As a result, this defense cannot stand.

### C. Law of the Case Doctrine

The doctrine of law of the case is as follows: once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless a compelling reason to do so appears.[95] "The law of the

87. Answer to Compl., D.I. 5, p. 47.

88. *Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir.2001) (quoting *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000)).

89. *In re IT Grp., Inc.*, 331 B.R. at 601 (discussing the holding in *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 317 (3d Cir.2003)).

90. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1077 (3d Cir.1992).

91. *Id.*

92. D.I. 110, p. 10.

93. Second Amended Chapter 11 Plan of Reorganization for Vaso Active Pharmaceuticals, Inc., Del. Bankr. No. 10–10855, D.I. 96, Section 11.1.1.

94. Defendants' Opposition to the First Motion, D.I. 13, p. 26.

95. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) ("[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citations omitted)); *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages

case doctrine provides that when a court actually decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. However, that doctrine only applies to issues that were actually litigated and decided by the court."[96] In the interests of finality and judicial economy,[97] the law of the case doctrine also precludes relitigation of issues in which parties have already had a full and fair opportunity to litigate.[98] The doctrine, however, does not preclude reconsideration of previously decided issues in extraordinary circumstances, such as situations in which new evidence is available, a supervening law has been announced, or an earlier decision was clearly erroneous and would create manifest injustice.[99] The law of the case doctrine is not meant to "restrict a court's power but rather governs its exercise of discretion."[100]

■■■ Masiz argues that the Court should not rely on the findings made in the Judgment on its first motion as that Judgement is currently on appeal. Indeed, he urges the Court to defer its decision until the appeal has been decided. Masiz has misconstrued the law of the case doctrine.

This Court is guided by the law of the case doctrine to keep its decisions consistent with, rather than deviate from, its findings within its Judgment granting the first motion, issued on December 19, 2012. A mere appeal of that ruling to the District Court does not automatically render the Judgment "clearly erroneous," nor does the appeal of the first motion prevent this Court from moving forward in its present adversary proceeding.[101] Furthermore, to the extent that any new findings and decisions are made under this motion, these have been determined based on evidence and papers contained within the current record. As a result, the doctrine of the law of the case has been properly followed in this present case, notwithstanding the appeal currently pending in District Court.

### D. Timeliness

■■■ The Court's original Scheduling Order, entered on June 20, 2011, stated that "all dispositive motions shall be filed and served by one hundred ninety five (195) [days] after an answer or other responsive pleading is filed ..."[102] It was also stated that "Deadlines contained in this Scheduling Order may be extended only by the Court and only upon written

in the same case."); *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir.1991) ("The doctrine of the law of the case dictates that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation."); *In re IT Grp., Inc.*, 322 B.R. at 736.

96. *Philip Servs. Corp. v. Luntz (In re Philip Servs.)*, 267 B.R. 62, 66 (Bankr.D.Del.2001) (citations omitted).

97. *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir.1997).

98. *See In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir.2002).

99. *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir.1998).

100. *Id.*

101. *Cf. Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1082 (D.C.Cir.1984) (rejecting the application of the "clearly erroneous" exception to the law of the case doctrine, because no error was found, let alone "clear" error and manifest injustice.) ("We do not intend to allow this avenue of attack on the law of the case to become an auxiliary vehicle for the repetition of arguments previously advanced, without success ...").

102. D.I. 11.

motion for good cause shown." [103] This deadline for dispositive motions therefore expired on January 12, 2012, and was not mentioned in the Court's Amended Scheduling Order (entered on November 26, 2012).[104]

Plaintiff filed this motion on January 3, 2013,[105] which was past the deadline of January 12, 2012 as set forth in the original Scheduling Order. There has not been any motion made by Plaintiff to extend the time for filing dispositive motions or to modify the Scheduling Order.

▋ Notwithstanding the deadline in the Court's original Scheduling Order, however, the Federal Rule of Bankruptcy Procedure 7056 states the following:

> Rule 56 F.R.Civ.P. applies in adversary proceedings, except that any motion for summary judgment must be made at least 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise.

Here, the date that this adversary proceeding is scheduled for trial is still currently undetermined.[106] As a result, the filing of Plaintiff's motion for partial summary judgment remains timely, as it remains within 30 days before any initial evidentiary hearing is scheduled. The suggestion that "the Scheduling Order acts as a bar to a motion for summary judgment is mistaken, as the Court always retains discretion to modify the Scheduling Order." [107]

The claims for avoidance and recovery in this motion were pleaded in the original Complaint under Count I and Count VIII, giving Masiz ample notice of the claims.[108] Moreover, Plaintiff filed the first motion on July 11, 2013, a date inside the original summary judgment deadline. The second motion followed the Courts disposition on October 9, 2012 of the first motion—a date outside the deadline. When recovery for the transfers from Masiz was unavailable under a theory of fraudulence conveyance in the first motion,[109] only then did the bifurcation of the claims against Defendants Frattaroli and Masiz by Plaintiff become necessary in order to effectuate recovery of the transfers, and it was this bifurcation which led to the filing of this motion only against Masiz. In this instance, the Court cannot hold the timing of its disposition of the first motion to deprive Plaintiff an opportunity to bring the current motion.

The Court therefore amends the Scheduling Order accordingly to allow this motion to move forward.

103. *Id.*

104. D.I. 39.

105. D.I. 64.

106. *See* Order Assigning Adversary Proceeding to Mediation and Appointing Mediator, D.I. 18 ("ORDERED that this matter is scheduled for Trial date to be determined.").

107. *United States v. Pearson*, No. 10–442–LPS–MPT, 2012 WL 3249460 at *1 (D.Del. Aug. 7, 2012) (citing Fed.R.Civ.P. 6(b)(1) and Fed R. Civ. P. 16(b)(4)).

Fed.R.Civ.P. 16 is made directly applicable through Fed. R. Bankr.P. 7016, and much like Fed.R.Civ.P. 6(b)(1), Fed. R. Bankr.P. 9006(b)(1) states that "the court for cause shown may at any time in its discretion ... with or without motion or notice order [a time] period enlarged ...".

108. D.I. 1, pp. 31–34, 53–54.

109. *See Vaso, supra.* The Court found elements for certain claims (but was unable to establish any single complete claims) against Masiz, despite establishing complete claims against Frattaroli.

## IV. Recovery of Avoidable Transfers Under Section 550 (Count VIII of the Complaint)

 Section 550 of the Code provides that "to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from ... the initial transferee of such transfer or the entity for whose benefit such transfer was made." Under Section 550(b)(1), however, a trustee may not recover from a "transferee that takes for value, including satisfaction ... of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer to be avoided ... "

The test is written in the negative. Provided that liability is satisfied under section 547, the transfers are recoverable *unless* (a) they were not made for the benefit of the Defendant; and (b) Defendant did not receive the transfers in satisfaction of a debt, was not acting in bad faith and had no knowledge of the avoidability of the transfers. In satisfying the "knowledge" requirement:

> No one supposes that "knowledge of voidability" means complete understanding of the facts ... some lesser knowl-edge will do ... Some facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge ... But this is not the same as a duty to investigate ... A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own.[110]

Here, Masiz has conceded that he received the transfers.[111] As previously discussed, the transfers were made on account of a debt incurred before the transfer.[112] There are no facts present which suggest that Masiz was acting in good faith when he received the transfers.[113] In contrast, the facts strongly suggest that Masiz had knowledge of the avoidability of the transfers, particularly because Defendants concede that the Debtor was insolvent at the time the transfers were made, and that Defendants were aware of the financial condition of the Debtor.[114] As a result, the Court finds that the avoidable transfers under Section 547 are recoverable.

## V. Prejudgment Interest

 The Trustee requests summary judgment on his entitlement to prejudgment interest. The awarding of pre-

---

110. *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 898 (7th Cir.1988) (accepted as controlling law by the Third Circuit in *In re Bressman*, 327 F.3d 229, 236 (3d Cir.2003)).

111. Masiz Aff., D.I. 13–1. at ¶¶ 21–22.

112. *See supra* p. 10 ("While Frattaroli has testified that no accrual of wages occurred, the Court found in the Opinion that Masiz and Frattaroli both had a claim against Debtor at the time of the transfers, based on the accrual of unpaid wages. Additionally, Masiz has characterized the transfers as a satisfaction of 'outstanding obligations and liabilities' on the part of the company. There is no genuine issue of material fact that the payments were not made on account of a debt incurred before the transfer.").

113. "In determining good faith for the purposes of a § 550(b)(1) defense, courts should analyze what the transferee 'knew or should have known instead of examining the transferee's actual knowledge from a subjective standpoint.' " *In re Nieves*, 648 F.3d 232, 238 (4th Cir.2011). *Accord In re Sherman*, 67 F.3d 1348, 1355 (8th Cir.1995); *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 536 (9th Cir.1990).

114. Defendants' Opposition to the First Motion, D.I. 13, pp. 26–27.

judgment interest is within the discretion of the Court.[115] The Code does not include a specific reference to prejudgment interest.[116] However, "courts have relied on the word 'value' in [section] 550(a) as authorizing an interest award."[117] The Court's exercise of its discretion to award prejudgment interest "must be exercised according to law, which means that prejudgment interest should be awarded *unless there is a sound reason not to do so.*"[118] The Third Circuit has instructed that the Court must state a "sound reason" to deny prejudgment interest.[119]

 Here, entry of summary judgment is found to be proper on the avoidability and recovery of the preferential transfers to Masiz. All affirmative defenses brought up by the nonmovant have been addressed and found inapplicable. Consequently, not only is there not a sound reason to deny Trustee prejudgment interest, there is a sound basis to award that interest. Prejudgment interest shall thus be awarded in connection with the Count above for which liability has been established.

### CONCLUSION

The Court will grant Plaintiff's Motion and enter summary judgment against John J. Masiz under Counts I and VIII of the Complaint. In addition, the Court will award prejudgment interest at an appropriate rate to Plaintiff.

An order will be issued.

**115.** *In re Hechinger Inv. Co. of Delaware, Inc.,* 489 F.3d 568, 579 (3d Cir.2007)

**116.** *Id.*

**117.** *Id.*

**118.** *Id.* at 580 (quoting *In re Milwaukee Cheese Wis., Inc.,* 112 F.3d 845, 849 (7th Cir.1997)) (emphasis added).

